DA 09-0334

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2009 MT 425N

IN THE MATTER OF J.W.L.,

Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DI 09-032
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Terry L. Seiffert; Attorney at Law, Billings, Montana

For Appellee:

Hon. Steve Bullock, Montana Attorney General; Mardell Ployhar,
Assistant Attorney General, Helena, Montana

Dennis Paxinos, Yellowstone County Attorney; Mark English Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  November 25, 2009

Decided:  December 15, 2009

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent.  It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    On May 15, 2009, the Yellowstone County Attorney's Office filed a petition to commit J.W.L.  The District Court of the Thirteenth Judicial District, Yellowstone County, ordered an evaluation and conducted a hearing on May 21, 2009.  J.W.L. appeals from the May 21, 2009, order of the District Court, committing him to the Montana State Hospital at Warm Springs for up to three months.  We affirm.

¶3    The events leading to the commitment arose on May 15, 2009, when J.W.L.'s wife called the Yellowstone County Sheriff's Office because of his erratic behavior.  She feared what he might do and the fact that he had a number of guns in the house.  J.W.L. repeatedly accused his wife of having been bribed to spy on him, and yelled at the sky to "quit watching me."  Two deputies arrived at the house, to find J.W.L. agitated, shaking, ready to fight.  He ordered them to leave his property and accused them of appearing on behalf of the "A.M.A." to spy on him.  The officers attempted to negotiate with J.W.L. for over two hours.  When the officers attempted to talk to his wife, he advanced toward them in a threatening manner and ignored orders to stop.  The officers had to discharge a

2

Taser device several times to subdue him. Medical personnel transported J.W.L. to the hospital.

¶4 J.W.L.'s wife testified that he had been recently laid off from his job, had stopped taking his medication to control his mental disorder and had become increasingly paranoid and withdrawn. His wife felt threatened by J.W.L. and feared that he could misconstrue a situation and harm someone.

¶5 J.W.L. required sedation at the hospital. The professional person who conducted the court-ordered evaluation concluded that J.W.L. suffered from a psychotic disorder that was manifested through delusional beliefs and behaviors, paranoia and refusal to take medication. The professional person was concerned that J.W.L. might attempt suicide and concluded that he needed to be committed. Following his detention he was delusional, paranoid, schizophrenic, uncooperative and unwilling to take any medication, including medication for high blood pressure.

¶6 J.W.L. argues on appeal that there was insufficient proof of a recent overt act to warrant commitment, and that the District Court improperly commented on his right to remain silent as part of the "verbal pronouncement" of the commitment.

¶7 A district court considering an involuntary commitment must determine whether the respondent suffers from a mental disorder and, if so, whether the respondent requires commitment. Section 53-21-126, MCA. The court may consider whether there is an imminent threat of injury to the respondent or others because of respondent's acts or omissions. Section 53-21-126(1)(c), MCA. The commitment must be supported by

3

proof of overt acts sufficiently recent in time to be material to the respondent's present condition. Section 53-21-126(2), MCA.

¶8 This Court reviews the sufficiency of the evidence in a civil commitment proceeding in the light most favorable to the prevailing party, and we will not disturb the district court's findings of fact unless they are clearly erroneous. *In the Matter of A.S.B.*, 2008 MT 82, ¶ 16, 342 Mont. 169, 180 P.3d 625.

¶9 In this case, J.W.L.'s recent behavior in the days prior to the hearing was marked by his refusal to take helpful medication; by his paranoid and delusional behavior; by the fear his actions had instilled in his wife; and by his threatening demeanor toward the officers who responded to her call for help. His recent behavior also involved being so agitated and uncooperative at the hospital that he required medication to calm down. These are the behaviors and overt acts of a person who the District Court properly concluded was an imminent danger to himself or others. *In the Matter of F.B.*, 189 Mont. 229, 233-34, 615 P.2d 867, 869-70 (1980).

¶10 J.W.L. also contends that the District Court improperly commented on his exercise of his right to be silent. The professional person who evaluated J.W.L. reported that he had refused to talk to her. At the end of the hearing the District Court announced the decision to order the commitment, and stated:

> I'm sorry that you've been quiet. I guess to me, it seems a little bit uncooperative, because, how can they help you if you're not talking to them? So I'd encourage you to talk to them and let your feelings out. The bottom line is, I'm going to grant the petition for commitment, and let you be detained for up to three months.

4

The District Court followed the hearing with a written order than did not mention the fact that J.W.L. had refused to talk to the professional person.

¶11  J.W.L. correctly notes that a respondent in a commitment proceeding has the right to remain silent.  Section 53-21-115(6), MCA.  It is clear from the record that the District Court's reference to J.W.L.'s refusal to talk to the professional person was not a ground for his commitment, nor could it be under the statutes noted above. There were sufficient grounds to meet the statutory requirements for a commitment.  At most the comment was advice from the District Court to J.W.L. that he could help himself with his serious mental health issues by cooperating with caregivers.  We find no error.

¶12  We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2006, which provides for memorandum opinions.  The issues are clearly controlled by settled Montana law.  There clearly is sufficient evidence to support the District Court's findings of fact and conclusions of law.

¶13  Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

5